(113 So. 363)

No. 28389.

**THOMSON v. DAILY STATES PUB. CO. et al.**

May 23, 1927.

*(Syllabus by Editorial Staff.)*

Libel and slander ☞80—Petition for libelous article directed against newspaper, but not naming present owner or publisher, held to insufficiently allege publisher's right of action.

Petition, in libel suit by publisher of newspaper, based on statement insinuating that newspaper might again have brought criminals into city to discredit police, and failing to state when plaintiff became publisher of paper, or to draw any distinction between publisher at time when paper was said to have confessed importing criminals and its publisher at time of insinuation that paper might do so again, *held* insufficient to state a cause of action, where it denounced as false only the insinuation as made, since plaintiff could not assume responsibility for newspaper through all its past history and maintain cause of action without denouncing as false both statements therein.

Appeal from Civil District Court, Parish of Orleans; Wm. H. Byrnes, Jr., Judge.

Suit by James M. Thomson against the Daily States Publishing Company and others. Judgment of dismissal, and plaintiff appeals. Affirmed.

Eberhard P. Deutsch, of New Orleans, for appellant.

Dart & Dart and St. Clair Adams, all of New Orleans, for appellees.

ST. PAUL, J. The case is thus stated in the brief herein filed by plaintiff:

This is a suit for damages brought by James M. Thomson, publisher of "The New Orleans Item" [an evening newspaper, owned and issued by The Item- Company, Limited], against the Daily States Publishing Company, Limited [owner], Robert Ewing [publisher], and J. Walker Ross [managing editor], based on a libel contained in a publication of "the New Orleans Daily States" [an evening newspaper, owned and issued by the Daily States Publishing Company, Limited], of date February 2, 1925; the substance of which libel is contained in the following excerpt from the article complained of, to wit: *"Has the Item again resorted to the trick of bringing dips and burglars here to discredit Mr. Molony and help elect Mr. Behrman?"* The defendants filed exceptions of no cause of action to the petition, and these were sustained by the court a qua and plaintiff's suit dismissed. Plaintiff has appealed from the judgment of the lower court. (Quotation italicized by us.)

I.

The article complained of was a "front page editorial," and is in full as follows:

### The Item Crime Wave.

The Item is agitated by a "crime wave"—conveniently discovered on the eve of election.

This is the second time in the history of the Item that "crime waves" have stirred it into seething hysterics. Stanley Ray, commissioner of public safety, says that this second "exposure" of a "crime wave" has developed into something besides mere political propaganda.

"The Item," Mr. Ray said, "asked me for an interview on the crime wave, and I gave that paper the following statement:

"The crime wave, as such, was ushered in about ten days ago by the Item as a political move in answer to my published reports on the records of the police department. Since so much publicity was given this 'crime wave,' it is a notable fact that for the past three or four days there are several thugs active in the city. You can draw your own conclusions. In the meantime the police, headed by Superintendent Molony, are still on the job and will continue to hunt out criminals and thugs."

Mr. Ray added that he believed the thugs he referred to had come to New Orleans within the past four or five days.

This second discovery of a "crime wave" recalls that other time when the Item found a citizenry menaced and assailed by footpads, robbers, yeggs, and other species of the burglarious gentry. When we got the goods on it, the Item confessed it had imported thugs and thieves "to show up the police department." But the people couldn't see the joke. They were robbed right and left, all right, but the unclubby thieves so imported didn't give the plunder back.

Has the Item again resorted to the trick of bringing dips and burglars here to discredit Mr. Molony and help elect Mr. Behrman?

## II.

The petition herein filed, after setting forth in paragraphs 1 and 2 the responsibility of the defendants for the article above given and in paragraph 3 the full text of said article, then proceeds as follows:

*Paragraph 4.* Petitioner further alleges that the said statement above mentioned is utterly false, malicious, defamatory, and libelous, and that it was the purpose and intention of defendants to reflect upon petitioner, to mortify and humiliate him, to deprive him of his good name, and to injure your petitioner in his good standing and in the esteem of his neighbors, friends, and acquaintances.

*Paragraph 5.* Petitioner now represents that he is the president of the Item Company, Limited, and the publisher of the New Orleans Item; that he is actively engaged in the management of the business of the Item Company, Limited, and his responsibility as such is known and recognized by the general public and by each of said defendants.

*Paragraph 6.* Now your petitioner shows that the above statement, contained in the said issue of the New Orleans States, was made without probable cause and with a reckless disregard of the truth and of petitioner's right to enjoy, without challenge, the good reputation which his life and conduct had earned for him, and petitioner shows that the matter complained of constitutes a false and malicious libel.

*Paragraph 7.* Petitioner now avers that he has always enjoyed the confidence and respect of the people of this city and state, and that, by reason of this defamatory, libelous, false, and malicious statement, published in the New Orleans States by defendants herein, petitioner has sustained damages to his good name and to his reputation.

*Paragraph 8.* Now your petitioner shows that said statement seriously reflects upon his honesty and integrity and is calculated to impair his usefulness to himself and to the community and to create distrust in him, and has caused him much mortification and humiliation, and that, by reason thereof, he is entitled to recover judgment in the sum of $25,000 against said defendants individually and in solido.

And the prayer is for judgment accordingly.

## III.

It is part of the public history of the city of New Orleans (wherein this court holds its sessions) that at the date of said publication there was then in progress a campaign for the Democratic nomination for the office of mayor of the city of New Orleans; that Hon. Martin Behrman, who had already held said office for four terms of four years each and had been defeated for a fifth term by Hon. Andrew McShane, was again a candidate for said office, to succeed Mr. McShane; and that this time his (Mr. Behrman's) candidacy was again successful.

We make mention thereof for a better understanding of the words "on the eve of election," and "help elect Mr. Behrman," contained in said article.

## IV.

In the brief herein filed by plaintiff it is said:

The exceptions of no cause of action were based exclusively on the theory that the words quoted above ["Has the Item again," etc.] contained no defamatory allegations as to plaintiff; that no pleadings could be framed under which evidence might be introduced to show that plaintiff was meant by the words used in the article complained of, and that, even if such pleadings could be framed, the petition in the case at bar is insufficient to admit of the introduction of such evidence, and, consequently, discloses no cause of action.

Plaintiff contends that the article complained of is a clear libel on him; that he will show on the trial of the case that the use of the term "the Item," when taken with the context of the entire libelous article, indicates himself, and that not only can pleadings be framed to dis-

close a cause of action thereunder as to plaintiff, but that the petition in the instant case actually discloses a clear cause of action, and is ample to support evidence on a trial to disclose plaintiff's identity as the target of the libelous arrows shot from defendants' bow.

We take it, however, that defendants rely, at least somewhat, on the reasons assigned by the trial judge, since they quote in full in their brief the written reasons assigned by him for sustaining the exceptions of no cause of action.

And whether or not pleadings could be framed, under which it might be possible to show that the article above quoted indicates this plaintiff, is beyond the question before us.

That question is: Does *this* petition disclose a cause of action in plaintiff?

### V.

And the solution of *that* issue is not to be found in the answer to the question whether a libel published concerning a corporation *may* also include a libel upon the officers thereof.

For the article complained of neither names, nor refers directly to, any corporation whatsoever. It names the Item, which is *a continuing publication* or series of publications, having an entity or being of its own which is apart and distinguishable from that of its owners, publishers, and editors. Thus a certain illustrated weekly magazine of nation-wide circulation boasts that it was "founded Anno Domini 1728 by Benjamin Franklin." So that it has remained *the same publication* for 200 years, though its owners, publishers, and editors have changed many times since; and the present publishers thereof are no more responsible for what Franklin may have said and done in connection with that magazine than that philosopher's ghost is responsible for the shortcomings, if any, of the present publishers.

The fact is that such a publication can be identified only with the owner or publisher or editor thereof at the time of some particular issue thereof.

### VI.

Now, as was well perceived by the trial judge, plaintiff's petition identifies him with the Item either too much or not enough to show in him a cause of action by reason of the article published.

Thus the article complained of contains several "statements," including two which are connected and mutually dependent, to wit, one statement that the Item at one time imported thugs and thieves "to show up the police department," and had confessed it, and another insinuating that the Item might have done so "again." But the petition (three times) denounces only *one* "statement" as false; the statement so denounced being, as shown by the brief (though not by the petition), the insinuation that the Item might "again" have brought dips and burglars into the city to discredit the police.

The petition, however, does not set forth *when* plaintiff became the publisher of the Item, and nowhere and no otherwise draws any distinction between the publisher of the Item at the time when it is said to have confessed that it had imported thugs and thieves "to show up the police department," and its publisher at the time when it is insinuated that the Item might have done so "again."

Hence it follows that, with no such distinction drawn, the article cannot be libelous of plaintiff, because (1) either plaintiff is so fully identified with the Item throughout its whole history that he cannot maintain a cause of action as to words which merely imply the possibility of a second wrongdoing whilst choosing to ignore a direct charge of former wrongdoing of the same kind, (2) or else plaintiff is so little identified with the Item throughout its whole history that the insinuation that the Item *did once import* and might "again" have imported, dips and bur-

glars to discredit the police department, cannot refer to him.

That is to say, plaintiff cannot identify himself with, and assume responsibility for, the Item throughout all its past history, and maintain a cause of action as to said article without denouncing as false not alone *one* of said statements, but *both*; and, if he wished to distinguish between himself and former publishers of the Item, he should have said so in his petition.

### VII.

So much for the strictly legal aspect of this case, and now as to a common sense view of it.

The briefs herein filed and the opinion of the trial judge all refer to the case of State of Louisiana v. Robert Ewing and J. Walker Ross, No. 28419 of the docket of the criminal district court for the parish of Orleans, wherein these defendants were charged with criminal libel on account of the article herein complained of, and wherein they were discharged for insufficiency of the information filed against them. (See the same case in this court, on writ of certiorari, No. 28248 of our docket.)

We find (inter alia) in the motion to quash said information filed by said defendants, the following disclaimer concerning this plaintiff, to wit:

That "at the time referred to in said alleged libelous article when 'the Item' confessed it had imported thugs and thieves into the city of New Orleans, *it was owned and managed by one Dominick C. O'Malley.*" (Italics ours.)

Vide, also, Cooke v. O'Malley, 109 La. 382, 33 So. 377, and Luzenberg v. O'Malley, 116 La. 699, 41 So. 41.

Also, we said hereinabove, that the "Mr. Behrman," referred to in said article was Hon. Martin Behrman, already four times elected to the office of mayor of the city of New Orleans, and therefore well known to all the people thereof, and that he had been successful in his candidacy for a *fifth* term.

Wherefrom we conclude that the electors of said city, male and female, *could not and did not* believe that the persons and institutions supporting the candidacy of Mr. Behrman, and therefore likely to influence somewhat the course of his administration, were such as might be capable of importing thieves and thugs to embarrass and discredit the police of said city; in short, that the citizens of New Orleans did not take seriously the innuendo contained in the question complained of.

The article, of course, overstepped the bounds of what is permissible even in the ardor of a political campaign, but it was nevertheless well recognized to be nothing more than a "slam" by one rival newspaper at another, made in the midst of such a campaign. It had no effect at the time and has long since been forgotten by all, and plaintiff's reputation and standing in the community have in no way been damaged thereby.

Had the petition been so framed as to show a cause of action, plaintiff might have been entitled to nominal damages as a vindication of his good name. However, it is *not* so framed; but what we have said above will answer the same purpose. Vide Levert v. Daily States Pub. Co., 123 La. 594, 49 So. 206, 23 L. R. A. (N. S.) 726, 131 Am. St. Rep. 356.

### Decree.

The judgment appealed from is therefore affirmed.